IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WEIRTON MEDICAL CENTER, INC.,

    Plaintiff,

v.                                      Civil Action No. 5:15CV132
                                                                  (STAMP)

COMMUNITY HEALTH SYSTEMS, INC.,
QUORUM HEALTH RESOURCES, LLC,
STEPHEN MILLER, MICHAEL ROLPH,
ROBERT LOVELL, ROBERT VENTO,
DANIEL HAMMAN and JOHN WALTKO,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING AS FRAMED
## DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS

### I. Procedural History

Previously, this Court directed the parties to conduct limited discovery on the nature and extent of defendant Community Health Systems, Inc.'s minimum contacts with West Virginia as they pertain specifically to the claims alleged in this civil action dealing with personal jurisdiction.[1] ECF No. 56. Plaintiff Weirton Medical Center, Inc. ("Weirton") has since served Community Health Systems, Inc. ("CHS") with eleven interrogatories, fifteen document requests, and a notice of deposition of CHS's corporate representative under Federal Rule of Civil Procedure 30(b)(6).

---

[1] This Court's order dated April 25, 2017 states "the parties are DIRECTED to conduct limited discovery on the nature and extent of CHS's contacts with West Virginia as they pertain specifically to the claims alleged in this civil action . . . . **Discovery shall be limited to the personal jurisdiction issue only**." ECF No. 56 at 2 (emphasis in original).

Further, Weirton served notices of depositions of defendants Robert Vento and Daniel Hamman.

Defendants Quorum Health Resources, LLC ("QHR"), Stephen Miller, Michael Rolph, Robert Lovell, Robert Vento, Daniel Hamman, and John Waltko (collectively "the QHR defendants") filed a joint motion for a protective order asking this Court to strike the notices of depositions of Vento and Waltko, arguing that they are overly broad and not proportional to the dispute. ECF No. 62. Alternatively, the QHR defendants ask that this Court order the depositions to be taken in Nashville, Tennessee where the deponents live.

CHS then filed a separate motion for a protective order asking this Court to strike the notice of deposition of its corporate representative as to seven of the nineteen topics listed by Weirton in the notice. ECF No. 64. CHS argues that these seven topics are outside the scope of the ordered limited discovery and are overly broad.

On June 23, 2017, the parties appeared before this Court for oral arguments on the defendants' motions. At the hearing, this Court granted as framed the defendants' motions. Specifically, this Court ruled that Weirton may conduct the depositions of Vento, Waltko, and CHS's corporate representative on matters within the scope of the ordered limited discovery. Further, this Court adopted Weirton's alternative request and ruled that the

depositions of Vento and Waltko shall be taken in Nashville, Tennessee. This Court directed the parties to meet and confer to schedule those depositions and to report to this Court the date on which those depositions will be held. The parties have now scheduled those deposition for July 6, 2017. This memorandum opinion and order serves to confirm this Court's pronounced order.

## II. Applicable Law

Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In considering proportionality, courts must consider: (1) "the importance of the issues at stake in the action"; (2) "the amount in controversy"; (3) "the parties' relative access to relevant information"; (4) "the parties' resources"; (5) "the importance of the discovery in resolving the issues"; and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. This, of course, is limited by the express scope of the limited discovery this Court previously ordered.

## III. Discussion

Weirton asserts three theories to establish this Court's personal jurisdiction over CHS: (1) that CHS' subsidiaries CHSPSC,

3

LLC, QHR, and QHR Intensive Resources, LLC ("QIR"), were jointly or severally agents of CHS regarding the underlying dispute; (2) that CHS exercised control over its subsidiaries such that their contacts should be imputed to CHS; or (3) that CHS's agents otherwise made contacts with West Virginia regarding the underlying transactions.

West Virginia's long-arm statute, which is coextensive with the Due Process Clause of the Fourteenth Amendment, expressly imputes an agent's contacts with West Virginia to the agent's principal. W. Va. Code § 56-3-33. The West Virginia Supreme Court of Appeals has held that an agent's contacts are imputed to its corporate principal. Nezan v. Aries Techs., Inc., 704 S.E.2d 631, 641 (W. Va. 2010). The court has also set forth a standard by which a subsidiary's contacts may be imputed to a parent corporation. Bowers v. Wurzburg, 501 S.E.2d 479, 490 (W. Va. 1998). Thus, the existence of a principal-agent relationship and the nature of a parent-subsidiary relationship may be relevant to determining whether a corporation has minimum contacts with West Virginia.

Accordingly, this Court reaffirms the scope of the ordered limited discovery to "the nature and extent of CHS's contacts with West Virginia as they pertain specifically to the claims alleged in this civil action." ECF No. 56. Based on the parties' arguments and proffers, issues relevant to CHS's contacts with West Virginia

include: (1) any principal-agent relationships between the defendants; (2) the nature of CHS's parent-subsidiary relationships with CHSPSC, LLC, Quorum Health Resources, LLC, and QHR Intensive Resources, LLC; and (3) any other minimum contacts CHS may have with West Virginia relating to the claims alleged in this civil action.

The QHR defendants argue that the depositions of Vento and Waltko are unduly burdensome because those defendants were previously deposed and provided live testimony in the parties' first arbitration. Weirton argues that CHS's contacts with West Virginia were not at issue in the first arbitration and were not relevant there. Thus, Weirton argues that it is entitled, pursuant to the ordered limited discovery, to question Vento and Waltko regarding CHS's contacts.

Weirton indicated that it intends to question Vento and Waltko as to the involvement of any CHS employees or agents in the transactions between QHR or QIR and Weirton underlying this civil action. Such testimony goes to the existence of any principal-agent relationships between CHS and the QHR defendants and any contacts of CHS agents with West Virginia. Accordingly, this Court finds that Weirton is entitled to depose Vento and Waltko within the scope of the ordered limited discovery. However, as stated above, this Court directs the parties to complete those depositions

on July 6, 2017 in Nashville, Tennessee to accommodate the witnesses.[2]

CHS argues that nine of the topics identified in Weirton's notice of deposition of CHS's corporate representative are overly broad. These topics are identified in a notice of deposition filed as CHS's exhibit at the motions hearing. ECF No. 70. Those topics are identified as:

> 2.   The business of CHSPSC in 2009, 2010 and 2011 and the way and manner in which CHSPSC carried out that business.
> . . .
> 4.   CHS's 10-K filings for the years 2009 through the present.
> . . .
> 10.  Communications (including topics, but not specifics) between CHSPSC and QHR relating to [Weirton] from 2009 to 2015, including:
>
>> (i) information CHSPSC provided to QHR regarding [Weirton];
>>
>> (ii) information QHR provided to CHSPSC regarding [Weirton];
>>
>> (iii) any due diligence conducted by CHSPSC or any CHSPSC subsidiary concerning [Weirton];
>>
>> (iv) any review of the contract between QHR and [Weirton] conducted by CHSPSC;
>>
>> (v)  internal communications, presentations or cost-benefit analysis reflecting CHSPSC's decision to refer [Weirton] to QHR.

---

[2] The parties indicated at the hearing that they agree to conduct the depositions in Nashville.

11. Communications (including topics, but not specifics) between CHSPSC and QIR relating to [Weirton] from 2009 to 2015, including:

    (i) information CHSPSC provided to QIR regarding [Weirton];

    (ii) information QIR provided to CFISPSC regarding [Weirton];

    (iii) any due diligence conducted by CHSPSC or any CHSPSC subsidiary concerning [Weirton];

    (iv) any review of the contract between QIR and [Weirton] conducted by CHSPSC;

    (v) internal communications, presentations or cost-benefit analysis reflecting CHSPSC's decision to refer [Weirton] to QIR.

12. Any meetings relating to [Weirton] attended by CHSPSC from 2009 to 2015.

13. CHSPSC communications (including topics, but not specifics) with any third party discussing or otherwise related to [Weirton] from 2009 to 2015.

14. The relationship between CHS and CHSPSC from January 1, 2009 to the present, including any ownership interest of CHS in CHSPSC, any contracts between CHS and CHSPSC, and the nature of any services provided by CHSPSC to CHS.

15. The relationship between CHSPSC and QHR from January 1, 2009 to the present, including any ownership interest of CHSPSC in QHR, any contracts between CHSPSC and QHR, and the nature of any services provided by CHSPSC to QHR.

16. The relationship between CHSPSC and QIR from January 1, 2009 to the present, including any ownership interest of CHSPSC in QIR, any contracts between CHSPSC and QIR, and the nature of any services provided by CHSPSC to QIR.

ECF No. 70 at 4-6. Specifically, CHS takes issue with questions regarding the business practices of CHSPSC, LLC, its communications with CHS, its meetings with CHS, its meetings with third parties

7

relating to Weirton, and the ownership relationships between it, CHS, QHR, and QIR.  Weirton argues that these topics are relevant to determining whether CHSPCS, LLC was an agent of CHS, whether QHR or QIR were agents of CHSPCS, LLC, and whether any of these parties was the alter ego of the other.

This Court finds that, generally, the contested topics Weirton set forth in its notice of deposition of CHS's corporate representative, numbers 2, 4, 10, 11, 12, 13, 14, 15, and 16, are relevant to a determination of whether CHS had sufficient minimum contacts with West Virginia for this Court to exercise personal jurisdiction over CHS.  This Court makes no specific ruling as to the disputed topics in the notice of deposition of CHS's corporate representative but states that Weirton is entitled to question CHS's corporate representative about the disputed topics but only <u>within the limited scope of the ordered discovery</u>, that is the issue of personal jurisdiction over CHS.

## IV. <u>Conclusion</u>

For the above reasons, the QHR defendants' motion for a protective order (ECF No. 62) is GRANTED AS FRAMED, and CHS's motion for a protective order (ECF No. 64) is GRANTED AS FRAMED. Further, the parties are directed to take the depositions of Robert Vento and John Waltko on July 6, 2017 in Nashville Tennessee.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: June 27, 2017

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE