IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WEIRTON MEDICAL CENTER, INC.,

   Plaintiff,

v.            Civil Action No. 5:15CV132
                   (STAMP)

COMMUNITY HEALTH SYSTEMS, INC.,
QUORUM HEALTH RESOURCES, LLC,
STEPHEN MILLER, MICHAEL ROLPH,
ROBERT LOVELL, ROBERT VENTO,
DANIEL HAMMAN and JOHN WALTKO,

   Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD,</u>**
**<u>GRANTING DEFENDANTS' MOTION TO CONFIRM ARBITRATION AWARD</u>**
**<u>AND FOR ENTRY OF FINAL JUDGMENT,</u>**
**<u>CONFIRMING ARBITRATION AWARD,</u>**
**<u>DENYING PLAINTIFF'S MOTION TO EXPEDITE RULING ON</u>**
**<u>PENDING MOTION TO VACATE ARBITRATION AWARD AS MOOT AND</u>**
**<u>DISMISSING DEFENDANTS' MOTION TO DISMISS AS MOOT</u>**

The plaintiff, Weirton Medical Center, Inc. ("Weirton"), asks this Court to vacate an arbitration award under § 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Previously, this Court granted the defendants' motion to compel arbitration and stayed this civil action pending the arbitration. The arbitrator issued an award dismissing all of Weirton's claims. Weirton then filed this motion to vacate the arbitration award on the grounds that the arbitrator exceeded his powers and manifestly disregarded applicable law. For the following reasons, Weirton's motion to vacate is denied and the arbitration award is confirmed. Plaintiff's motion to expedite ruling on pending motion to vacate

arbitration award (ECF No. 81) is denied as moot. Defendants'
motion to dismiss for failure to state a claim (ECF No. 13) is
dismissed as moot.

## I. Background

Weirton Medical Center is a hospital in Weirton, West
Virginia. It entered into two related contracts for administrative
services intended to assist Weirton in a financial turnaround.
First, in November 2009, Weirton entered into an Interim Support
Services Agreement ("the Interim CFO Agreement") with Quorum Health
Resources, LLC ("Quorum") in which Quorum provided Weirton with an
Interim Chief Financial Officer ("CFO"), Stephen Miller. Then in
May 2010, Weirton entered into an Agreement for Hospital
Administrative Services ("the Turnaround Agreement") with Quorum
Intensive Resources, LLC ("QIR"). The Turnaround Agreement
provided that QIR would provide an Interim Chief Financial Officer
("CFO") and an Interim Chief Operating Officer ("COO") and would
provide Weirton various administrative services.

Before the engagement term was to end, Weirton terminated the
agreement and refused to pay QIR's invoices. QIR forced
arbitration in accordance with the Turnaround Agreement, arguing
that Weirton breached the Turnaround Agreement by failing to pay
the invoices ("the First Arbitration"). Weirton then asserted
counterclaims for breach of various provisions of the agreement,
negligence, breach of fiduciary duties, and corporate waste. After

three years of discovery and a full evidentiary hearing, the arbitrator entered an award in favor of QIR on all claims ("the First Award"). Weirton then filed suit in this Court along with a motion to vacate the First Award. QIR filed a motion to confirm the award. This Court denied Weirton's motion to vacate and granted QIR's motion to confirm the First Award. Weirton appealed to the United States Court of Appeals for the Fourth Circuit, and on March 29, 2017, the Fourth Circuit affirmed this Court's ruling by per curiam opinion.

In October 2015, two days after filing its motion to vacate the First Award, Weirton filed this civil action against Community Health Systems, Inc. ("CHSI"), Quorum, Stephen Miller, Michael Rolph, Robert Lovell, Robert Vento, Daniel Hamman, and John Waltko. Each of the individual defendants were either employees of Quorum or QIR or served as interim employees of Weirton under the Interim CFO Agreement or the Turnaround Agreement. Weirton alleged claims for fraud and misrepresentation, promissory estoppel, breach of fiduciary duties, aiding and abetting the breach of fiduciary duties, the tort of outrage, negligence, negligent misrepresentation, and civil conspiracy. Quorum and the individual defendants filed a joint motion to compel arbitration under the arbitration agreements contained in the Interim CFO Agreement and the Turnaround Agreement. This Court granted that motion and stayed this civil action pending the arbitration.

In March 2016, Weirton filed its arbitration demand with the American Arbitration Association ("AAA") stating its claims against CHSI, Quorum, and the individual defendants ("the Second Arbitration"). Weirton filed a detailed statement of its claims in July 2016. The defendants then filed motions for summary disposition. The arbitrator issued an award granting summary disposition in favor of CHSI, Quorum, and the individual defendants ("the Second Award"). The arbitrator concluded: (1) that CHSI was not a proper respondent to the action and that Weirton failed to state claims against CHSI; (2) that all of Weirton's claims, except for the breach-of-contract claim against Quorum, were barred by res judicata or collateral estoppel; (3) that Weirton's breach-of-contract claim against Quorum was time-barred under the applicable Tennessee statute of limitations; (4) that Weirton's tort claims were alternatively barred by the gist-of-the-action doctrine; and (5) that Weirton's unjust enrichment claim is barred because of the parties' contracts.

Weirton then filed in this civil action its motion to vacate the Second Award. It argues that the arbitrator exceeded his powers in granting summary disposition and that the arbitrator manifestly disregarded applicable law. Quorum and the individual defendants filed a joint response. CHSI filed a response in which it purported to enter a special appearance to challenge whether this Court may exercise personal jurisdiction over CHSI. This

Court entered a separate memorandum opinion and order dismissing CHSI from this civil action for lack of personal jurisdiction. Further, on May 15, 2017, the parties appeared before this Court for oral argument on the motion to vacate. Additionally, Weirton filed a motion to expedite ruling on the pending motion to vacate arbitration award (ECF No. 81), and the QHR defendants filed a motion to confirm arbitration award and for entry of final judgment (ECF No. 87), asserting entitlement to the costs incurred during arbitration. These motions have been fully briefed.

## II. Applicable Law

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, an arbitration award may be vacated on four grounds: "(1) when the award was procured by corruption, fraud, or undue means; (2) when there was evident partiality or corruption on the part of an arbitrator; (3) when an arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior causing prejudice to the rights of any party; or (4) when an arbitrator exceeded his or her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Jones v. Dancel, 792 F.3d 395, 401 (4th Cir. 2015); see also 9 U.S.C. § 10.

Generally, "judicial review of an arbitration award in federal court is severely circumscribed and among the narrowest known at law." Jones, 792 F.3d at 401 (internal quotation marks omitted). A court "may not overturn an arbitration award 'just because it believes, however strongly, that the arbitrator[] misinterpreted the applicable law.'" Id. Further, "a court must confirm an arbitration award unless a party to the arbitration demonstrates that the award should be vacated under one of the above . . . enumerated grounds." Id. (internal quotation marks omitted) (citing Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 582 (2008)); see also 9 U.S.C. § 9.

### III. Discussion

Weirton argues that the award should be vacated because the arbitrator exceeded his powers and because the award is in manifest disregard of the law. This Court finds no grounds for vacatur.

### A. Whether the Arbitrator Exceeded His Powers

"By its terms, [§] 10(a)(4) allows courts to vacate arbitration awards only when arbitrators 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" Jones, 792 F.3d at 405 (quoting 9 U.S.C. § 10(a)(4)). "[A] plaintiff seeking relief under this provision bears the 'heavy burden' of showing that the arbitrator acted outside the scope of the authority granted by the parties in their contract, by 'issuing an award that

simply reflects his own notions of economic justice.'" Id.
(quoting Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068
(2013)).

Weirton argues that the arbitrator exceeded his powers by
granting summary disposition rather than permitting discovery and
holding a hearing. It argues that the arbitration agreements, the
AAA Rules, and West Virginia and Tennessee's Rules of Civil
Procedure did not permit summary disposition. Further, Weirton
argues that summary disposition was premature because no discovery
had been conducted and factual disputes were evident.

Weirton made these same arguments before the arbitrator, and
he rejected them. The arbitrator expressly concluded that the 2009
AAA rules provided him "discretion to hear and grant motions for
summary disposition." ECF No. 33-1 at 2. He concluded that
summary disposition was not premature and that Weirton was not
entitled to discovery because "the asserted claims fail as a matter
of law." Id. The arbitrator also implicitly determined that this
matter was governed by the AAA rules and not the Rules of Civil
Procedure of Tennessee or West Virginia.

It is well settled that an arbitrator has jurisdiction to
"adopt such procedures as are necessary to give effect to the
parties' agreement" and that "'procedural' questions which grow out
of the dispute and bear on its final disposition are presumptively
. . . for an arbitrator[] to decide." Stolt-Nielsen S.A. v.

AnimalFeeds Int'l Corp., 559 U.S. 662, 685-86 (2010) (internal quotation marks omitted); see also Dockser v. Schwartzberg, 433 F.3d 421, 426-27 (4th Cir. 2006) (concluding the arbitrators had jurisdiction to determine the number of arbitrators that would hear the parties' dispute). Thus, an arbitrator is empowered to make a determination on procedural issues, and courts will not question that determination so long as it has some reasonable basis in the parties' agreement. See Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991) ("As long as the arbitrator is even arguably construing or applying the contract a court may not vacate the arbitrator's judgment.").

To that end, Weirton argues that the arbitration agreements do not provide authority to dispose of the case on summary disposition. Both arbitration agreements contain substantially identical language. Each provides for binding arbitration of any dispute arising out of or relating to the Interim CFO Agreement or the Turnaround Agreement, both invoke the 2009 AAA rules, both require a written and reasoned award, and both contain choice of law provisions.[1] The Interim CFO Agreement provides for

---

[1]The arbitration agreement contained in the Interim CFO Agreement provides:

> any controversy or claim arising out of or relating to this [agreement], or the breach, termination or validity thereof, shall be determined by binding arbitration in Brentwood, Williamson County, Tennessee in accordance with the arbitration rules of the American Arbitration Association ("AAA") in effect on the date of this

8

arbitration in Brentwood, Tennessee and for the application of Tennessee law. The Turnaround Agreement provides for arbitration in Pittsburgh, Pennsylvania and for the application of West Virginia law.

First, Weirton argues that, because the arbitration agreements provide for binding arbitration at particular locations, the parties intended to require full discovery and a full evidentiary hearing. It also argues that the arbitration agreements invoke the AAA rules and the procedural laws of Tennessee and West Virginia,

---

> [agreement] by a single arbitrator . . . . The arbitrator shall base the award on this [agreement], and applicable law and judicial precedent, and shall accompany the award with a written explanation of the reasons for the award. The arbitration shall be governed by the substantive and procedural laws of the State of Tennessee applicable to contracts made and to be performed therein.

ECF No. 33-4 at 6-7. Similarly, the arbitration agreement contained in the Turnaround Agreement provides:

> any controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity thereof, shall be determined by binding arbitration in Pittsburgh, PA, in accordance with the provisions of this Article VII and the arbitration rules of the American Arbitration Association ("AAA") in effect on the date of this Agreement by a single arbitrator . . . . The arbitrator shall base the award on this Agreement, and applicable law and judicial precedent, and shall accompany the award with a written explanation of the reasons for the award. The arbitration shall be governed by the substantive and procedural laws of the State of West Virginia applicable to contracts made and to be performed therein.

ECF No. 33-5 at 16-17.

none of which allow for summary disposition without an opportunity for discovery.

Second, Weirton argues that the arbitrator was obligated to apply West Virginia and Tennessee's Rules of Civil Procedure, which, Weirton argues, would not have permitted summary disposition without adequate discovery.  The arbitrator implicitly concluded that the AAA rules rather than West Virginia or Tennessee's Rules of Civil Procedure applied to determine whether summary disposition was proper.  This Court finds the arbitrator's conclusion to have a reasonable basis in the parties' agreements.

The Interim CFO agreement invokes the "substantive and procedural laws of the State of Tennessee applicable to contracts made and to be performed therein," ECF No. 33-4 at 7, the Turnaround Agreement invokes the "substantive and procedural laws of the State of West Virginia applicable to contracts made and to be performed therein," ECF No. 33-5 at 17, and both agreements invoke the "arbitration rules of the American Arbitration Association ("AAA") in effect on the date of" the agreements.  ECF Nos. 33-4 at 6; 33-5 at 16-17.  Read as a whole, these agreements make clear that the AAA rules governed procedural matters in the arbitration, while Tennessee and West Virginia law governed the substantive legal issues.[2]  Although the choice of law provisions

---

[2]As discussed below, the parties' invocation of the States' procedural laws applicable to contracts demonstrates the parties' intent to invoke the States' statutes of limitations, but not the

provide that the states' procedural law applicable to contracts was to be applied, application of those States' Rules of Civil Procedure in an arbitration proceeding would be wrong, especially in light of the express invocations of the AAA rules.[3] At best, these choice of law and procedural rules provisions create ambiguity as to what procedural law applied, a determination well within the arbitrator's jurisdiction. The arbitrator's decision to apply the AAA rules rather than the States' Rules of Civil Procedure has a reasonable basis in the parties' agreements. Thus, the arbitrator's determination that summary disposition was procedurally proper is entitled to deference.

Third, Weirton argues that the arbitration agreements required discovery and full evidentiary hearings because they specified the locations for such hearings. However, these designations of sites for arbitration hearings are not equivalent to express requirements that the parties conduct discovery and participate in a full evidentiary hearing on claims that fail as a matter of law. While the arbitration agreements do not expressly permit summary disposition, they do not expressly prohibit it either. The agreements invoke the 2009 AAA rules, which provide a set of

_____

States' Rules of Civil Procedure.

[3]The Supreme Court has noted that public policy favors arbitration as "an alternative to the complications of litigation" and a way to "avoid[] the delay and expense of litigation." <u>Wilko v. Swan</u>, 346 U.S. 427, 431-32 (1953). Duplication of litigation procedure in arbitration would hardly serve this purpose.

procedural rules including requiring arbitrators to "take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases." Rule L-4, AAA Commercial Arbitration Rules and Mediation Procedures (2009 ed.).[4] Further, the Rules of Civil Procedure of Tennessee and West Virginia allow for the dismissal of or summary judgment on legally insufficient claims. See Tenn. R. Civ. P. 12.02; 56.01-56.08; W. Va. R. Civ. P. 12; 56. Thus, this Court finds that the arbitrator's procedural determination that summary disposition was appropriate has a reasonable basis in the parties' agreements. Accordingly, the arbitrator did not exceed his powers in disposing of the arbitration on summary disposition.

B.   Manifest Disregard of the Law

Weirton argues that the arbitrator manifestly disregarded West Virginia and Tennessee law because he allegedly misapplied the law or otherwise made factual and legal errors. However, just as in Weirton's prior attempt to vacate the First Award, Weirton misunderstands the manifest disregard standard.

---

[4]This Court notes that under the 2009 AAA rules, the parties' dispute was considered a "Large, Complex Commercial Dispute" because Weirton's claims exceeded "$500,000 exclusive of claimed interest, arbitration fees and costs." Introduction, Large, Complex Cases, AAA Commercial Arbitration Rules and Mediation Procedures (2009 ed.).

While the Supreme Court's decision in <u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576 (2008), states that § 10(a) "provide[s] the FAA's exclusive grounds for expedited vacatur," <u>id.</u> at 584, the United States Court of Appeals for the Fourth Circuit has since confirmed that an award may also be vacated when the arbitrator "manifestly disregards" the law as "either [] an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." <u>Wachovia Secs., LLC v. Brand</u>, 671 F.3d 472, 483 (4th Cir. 2012) (internal quotation marks omitted). "A court may vacate an arbitration award under the manifest disregard standard only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." <u>Jones</u>, 792 F.3d at 402. This "is not an invitation to review the merits of the underlying arbitration or to establish that the arbitrator misconstrued or misinterpreted the applicable law." <u>Id.</u> (internal quotation marks omitted) (citation omitted). Rather, an arbitrator manifestly disregards the law when he was "aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision." <u>Remmey v. PaineWebber, Inc.</u>, 32 F.3d 143, 149-50 (4th Cir. 1994).

1. <u>Summary Disposition</u>

Weirton argues that the arbitrator manifestly disregarded Tennessee and West Virginia procedural law by granting summary disposition without discovery and in spite of disputed facts. Weirton argues that the Interim CFO Agreement and the Turnaround Agreement required the arbitrator to apply the Rules of Civil Procedure of Tennessee and West Virginia respectively. Weirton argues that the States' Rules of Civil Procedure preclude summary judgment where a genuine issue of material fact exists and where adequate discovery has not been had. It argues that factual disputes existed regarding the relationship between CHSI and Quorum, the defendants' roles in the alleged conspiracy to defraud Weirton, and the parties' actions in performing the agreements. Thus, Weirton argues that the arbitrator manifestly disregarded the States' Rules of Civil Procedure by granting summary disposition.

As discussed above, the arbitrator implicitly concluded that the AAA rules rather than the States' Rules of Civil Procedure applied to the arbitration. This was a procedural matter to be determined by the arbitrator, and this Court will defer to that ruling because it has some reasonable basis in the parties' agreements. <u>See</u> <u>Stolt-Nielsen</u>, 559 U.S. at 685-86 . Thus, because Tennessee and West Virginia's Rules of Civil Procedure did not apply to the issue of whether summary disposition was proper, the arbitrator did not manifestly disregard those laws.

2.    <u>Res Judicata and Collateral Estoppel</u>

Weirton argues that the arbitrator manifestly disregarded West Virginia law in concluding that all claims, except the breach-of-contract claim against Quorum, were barred by res judicata or collateral estoppel.    Specifically, Weirton argues that the arbitrator misapplied the doctrine of res judicata and disregarded West Virginia precedent regarding the finality of judgments.

First, the arbitrator correctly identified and applied West Virginia's law regarding res judicata and collateral estoppel.    <u>See</u> ECF No. 33-1 at 3-8.    While Weirton argues that the arbitrator misapplied the standard in finding that the individual defendants were in privity with QIR in the First Arbitration, the arbitrator clearly identified the correct standard and applied it.    Even if Weirton is correct that the arbitrator made factual and legal errors in applying the standard, that does not constitute manifest disregard of the law and is not a ground for vacatur.

Second, Weirton argues that the arbitrator manifestly disregarded the holdings of the West Virginia Supreme Court of Appeals in <u>Jordache Enterprises v. National Union Fire Insurance Company of Pittsburgh</u>, 513 S.E.2d 692 (W. Va. 1998), and <u>Flanagan v. Gregory & Poole, Inc.</u>, 67 S.E.2d 865 (W. Va. 1951), which Weirton asserts provide that a judgment is not final if it is pending on appeal.    Weirton argues that this Court's confirmation of the First Award was pending on appeal when the arbitrator issued

15

the Second Award and, thus, the judgment was not final. Weirton argues that it brought this to the arbitrator's attention in briefing, but that the arbitrator disregarded <u>Flanagan</u> and <u>Jordache Enterprises</u>. However, West Virginia law does not clearly provide that a judgment pending on appeal is not a "final judgment."

The West Virginia Supreme Court of Appeals has never directly considered the issue. In <u>Flanagan</u>, the defendant argued that the plaintiff should be estopped from alleging a claim it had recovered on in a prior action, which was pending on appeal. 67 S.E.2d at 972-73. The court noted, without deciding, that if "the first action is still pending on a writ of error . . . the judgment in the first action has no finality and would not estop plaintiffs." <u>Id.</u> In <u>Jordache Enterprises</u>, the court concluded that it must apply New York law regarding the res judicata affect of a New York judgment in a West Virginia case. 513 S.E.2d at 703. In doing so, the court noted that there appeared to be a conflict between New York and West Virginia law on the issue of whether a pending appeal is a "final judgment" because New York law provides that it is, while the court's dicta in <u>Flanagan</u> indicates that West Virginia might not treat a pending appeal as a final judgment. <u>Id.</u> However, the court mentioned <u>Flanagan</u> only in passing and did not actually rule on the issue. Thus, the court's statements in <u>Flanagan</u> and <u>Jordache Enterprises</u> regarding finality are both dicta. Further, the West Virginia Supreme Court has also concluded

that "[a]n erroneous ruling of [a] court will not prevent the matter from being res judicata," which seems to contradict the court's dicta in <u>Flanagan</u> and <u>Jordache Enterprises</u>. <u>State ex rel. Richey v. Hill</u>, 603 S.E.2d 177, 183 (W. Va. 2004). Accordingly, it is unclear whether West Virginia law provides that a pending appeal is not a final judgment for res judicata purposes. Because this legal principal is not "clearly defined" and is "subject to reasonable debate," the arbitrator did not manifestly disregard the law.

      3. <u>Statute of Limitations</u>

Weirton argues that the arbitrator manifestly disregarded Tennessee law by concluding that Weirton's breach-of-contract claim against Quorum was time-barred. First, Weirton argues that the arbitrator incorrectly concluded that the Tennessee statute of limitations applied to the arbitration. It argues that statutes of limitations do not apply to an arbitration unless expressly invoked in the arbitration agreement and that the arbitration agreement in the Interim CFO Agreement did not do so.

First, Weirton argues that the Tennessee statute of limitations does not apply to arbitration because it applies only to "actions," which, Weirton argues, are plainly limited to litigation before a court. Tenn. Code § 28-3-109; 28-3-101; 28-1-101. However, nothing in the Tennessee Code or relevant case law limits application of the statute of limitations to litigation

rather than arbitration. The statute's use of the broad term "actions" does not indicate a legislative intent to exclude arbitration. Further, there is nothing in the statute precluding parties from contractually invoking its application in arbitration.

Second, Weirton argues that statutes of limitations generally do not apply to arbitration unless the parties expressly contract for their application, and that the parties did not do so here. However, the arbitration agreement contained in the Interim CFO Agreement did invoke Tennessee's statute of limitations. The arbitration agreement expressly invoked the "substantive and procedural laws of the State of Tennessee applicable to contracts made and to be performed therein." ECF No. 33-4 at 7. Tennessee's statute of limitations on breach of contract actions is a procedural law applicable to contracts made and to be performed in Tennessee.[5] Thus, the parties' arbitration agreement expressly invoked Tennessee's statute of limitation. The arbitrator's decision has a sound basis in the parties' agreement and was not in manifest disregard of applicable law.

Third, Weirton argues that the arbitrator manifestly disregarded Tennessee law by concluding that the limitations period was not tolled. Weirton argues that Stephen Miller did not complete his service as Interim CFO until December 2010, and that

---

[5]In choice of law analysis, statutes of limitations are procedural rather than substantive.

18

Weirton did not learn of QIR's breach of the Interim CFO Agreement until May 2012, when it claims to have discovered QIR and Quorum's alleged fraudulent scheme to steer Weirton into the Turnaround Agreement. Thus, Weirton argues that the limitations period began to run at the earliest in December 2010 and at the latest in May 2012. Weirton argues that it filed this civil action within six years of both of those dates, tolling the limitations period. It argues that the arbitrator's failure to properly apply Tennessee's statute of limitations was a manifest disregard of the law.

However, the arbitrator correctly identified that under Tennessee law, the statute of limitations for breach-of-contract actions is six years, and that the limitations period begins to run when "a contracting party first knows or should know that the contract will not be performed." ECF No. 33-1 at 9 (internal quotation marks omitted) (quoting Coleman Mgmt., Inc. v. Meyer, 304 S.W.3d 340, 349 (Tenn. Ct. App. 2009)) (citing Tenn. Code § 28-3-109). Even if Weirton is correct that the arbitrator erroneously applied the tolling provision and made factual errors regarding when Weirton knew or should have known of the breach, the arbitrator did not manifestly disregard the law. This Court may not vacate the award simply because the arbitrator made legal or factual errors.

4.    <u>Gist-of-the-Action Doctrine</u>

The arbitrator concluded that Weirton's tort-based claims were barred by res judicata.  He alternatively concluded that those claims were barred by the gist-of-the-action doctrine.  Weirton argues that the arbitrator manifestly disregarded West Virginia law by applying the gist-of-the-action doctrine.  Specifically, Weirton argues that its tort-based claims were plead in the alternative to its breach of contract claims and should not have been dismissed, that application of the doctrine was premature, and that the doctrine did not bar its claims for fraud, misrepresentation, aiding and abetting, or civil conspiracy because those claims were based on breaches of "societal duties [that] exist independent of any contractual obligations."  ECF No. 31 at 23.

First, the arbitrator correctly stated the standard for applying the gist-of-the-action doctrine under West Virginia law. <u>See</u> ECF No. 31-1 at 9 (citing <u>Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP</u>, 746 S.E.2d 568, 577 (W. Va. 2013)).  Second, the arbitrator applied the gist-of-the-action doctrine after also concluding that the parties' rights and obligations were defined by contract.  <u>See</u> ECF No. 33-1 at 9-10.  Third, while Weirton claims that under West Virginia law there is an exception to the gist-of-the-action doctrine for fraud and other deceptive practices, the West Virginia Supreme Court of Appeals has not recognized a blanket exception.  In <u>Gaddy Engineering Company v.</u>

Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568 (W. Va. 2013), the West Virginia Supreme Court of Appeals held that a fraud claim was barred under the gist-of-the-action doctrine because the fraud claims involved simply claimed that affirmative promises of a contractual nature were made and not followed through on where the parties subsequently entered into a formal contractual relationship.  Id. at 576-77.  In that regard, the arbitrator expressly concluded that Weirton's fraud claims did not include "material allegations that fall outside of the contractual framework of the parties."  ECF No. 10.  Thus, the arbitrator correctly identified that the gist-of-the-action doctrine bars fraud claims that simply restate breach-of-contract claims and he applied that doctrine, rightly or wrongly, to Weirton's fraud claims.  Accordingly, the arbitrator did not manifestly disregard West Virginia law.

## IV.  Conclusion

This Court finds no basis under 9 U.S.C. § 10 to vacate the arbitration award.  Accordingly, Weirton Medical Center, Inc.'s motion to vacate (ECF No. 30) is DENIED.  Defendants' motion to confirm arbitration award and for entry of final judgment (ECF No. 87) is GRANTED, and the Court finds defendants are entitled to the amount of administrative costs incurred by the QHR defendants that the Arbitrator has required Weirton to bear, in the amount of Eight Thousand Seven Hundred Three Dollars and Seventy-Five Cents

($8,703.75).[6]  Pursuant to 9 U.S.C. § 9, it is ORDERED that a judgment be entered in favor of the defendants against the plaintiff dismissing WITH PREJUDICE all of the plaintiff's claims asserted in the arbitration against defendants Quorum Health Resources, LLC, Stephen Miller, Michael Rolph, Robert Lovell, Robert Vento, Daniel Hamman, and John Waltko.  Plaintiff's motion to expedite ruling on pending motion to vacate arbitration award (ECF No. 81) is DENIED AS MOOT.

IT IS SO ORDERED.[7]

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter as to defendants Quorum Health Resources, LLC, Stephen Miller, Michael Rolph, Robert Lovell, Robert Vento, Daniel Hamman, and John Waltko, and award defendants the amount of administrative costs, to be paid by Weirton, in the amount of Eight Thousand Seven Hundred Three Dollars and Seventy-Five Cents ($8,703.75).

---

[6]The $8,703.75 fee amount is not disputed by Weirton.  In its response to defendants' motion, Weirton states: "The QHR Defendants are correct that the Arbitrator has the authority under the applicable AAA rules to allocate among the parties the costs of the arbitration.  Since Arbitrator Curphy [sic] gave the QHR Defendants a complete victory, he apparently thought it proper for WMC to pay all of the costs of arbitration."  ECF No. 90 at 18.

[7]The Court also dismisses ECF No. 13 as moot.

DATED:     December 12, 2017


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE